**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701;<br><br>        Plaintiff,<br><br>    v.<br><br>DOUGLAS BURGUM, in his official capacity as<br>Secretary of the U.S. Department of the Interior,<br>1849 C Street, NW<br>Washington DC 20240;<br><br>BRIAN NESVIK, in his official capacity as<br>Director of the U.S. Fish and Wildlife Service,<br>1849 C Street, NW<br>Washington DC 20240; and<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street, NW<br>Washington, DC 20240;<br><br>        Defendants. | Case No. 26-1172<br><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. Plaintiff Center for Biological Diversity ("the Center") brings this case challenging the U.S. Fish and Wildlife Service's ("the Service") failure to finalize a listing status determination on the Center's petition to list the coal darter, in violation of the Endangered Species Act's ("ESA") mandatory deadline. The Service's failure to meet this deadline delays lifesaving protections for the imperiled coal darter, increasing its risk of extinction.

2. The Center brings this lawsuit for declaratory and injunctive relief, seeking an order that declares that the Service violated ESA section 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A),

1

by failing to timely issue the final listing status for the coal darter, and that directs the Service to issue the finding by a date certain.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). The Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) and 16 U.S.C. § 1540(g)(3)(A) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the Center's claims occurred in this District.

## PARTIES

5. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States. The Center has more than 101,611 active members throughout the country.

6. The Center brings this action on behalf of its members who derive recreational, educational, scientific, professional, and other benefits from the coal darter and its habitat. The Center's members' interests in protecting and recovering the coal darter and its habitat are directly harmed by the Service's failure to issue a timely final listing determination, delaying critical protections under the ESA that can put the fish on a path to recovery.

7. For example, Center member Nelson Brooke is the Riverkeeper for the Black Warrior River based in Birmingham, Alabama. Mr. Brooke has professional, recreational, and

aesthetic interests in the coal darter. He first encountered coal darters when performing a survey for the Cahaba shiner in the Locust Fork of the Black Warrior River in October 2016. Upon finding several coal darters during the survey, Mr. Brooke and his colleagues took photos of the darters and celebrated how they found another rare species of fish. As the Black Warrior Riverkeeper, Mr. Brooke has a professional interest in protecting coal darter habitat, because doing so will make the river a cleaner, more free-flowing, and more thriving habitat for all who use it, including rare and imperiled species. Mr. Brooke also has aesthetic and recreational interests in conserving the coal darter and its habitat. He visits the Locust Fork of the Black Warrior River at least once every other month and has concrete plans to continue these visits throughout 2026 and 2027. While out on the Locust Fork, Mr. Brooke canoes, boats, fishes, swims, and enjoys gazing into coal darter habitat. He regularly snorkels in the Locust Fork to look for mussels, snails, and fish, and in doing so he keeps an eye out for coal darters. Mr. Brooke also canoes in the Cahaba River several times a year. The ability to observe coal darters in river environments where the fish can thrive gives Mr. Brooke immense joy.

8. As another example, Center member Justinn Overton is the Riverkeeper for the Coosa River, and she also has professional, recreational, and aesthetic interests in the coal darter and its habitat. On a professional level, she visits all parts of the Coosa River system—including Hatchet and Weogufka Creeks—and is constantly on the lookout for the coal darter as an indicator of the health of the water bodies for which she is the Riverkeeper. She visits Hatchet Creek a couple of times a month during lily season and then every quarter throughout the remainder of the year and Weogufka Creek whenever water levels allow her to visit, and has plans to continue to do so at that regularity. Indeed, Ms. Overton purchased property in Coosa County to live closer to Hatchet and Weogufka Creeks because she finds something about these

3

water bodies that give her a spiritual sense of place and belonging. She boats, canoes, kayaks, floats, and swims throughout the Coosa River system, and on the Hatchet and Weogufka Creeks in particular. She is planning to hike the Pinhoti Trail along Weogufka Creek in 2026 and 2027. Ms. Overton has long sought to see the coal darter in the wild; she has found other darters, including the vermillion darter in Turkey Creek and the tri-spot darter in Big Canoe Creek, but has yet to observe a coal darter. She will continue to look for coal darters as she visits the species' habitat.

9.     In addition, Center member David Butler, the Cahaba Riverkeeper, also has professional, recreational, and aesthetic interests in the coal darter and its habitat. He first encountered the coal darter in 2016 when responding to a couple of catastrophic gasoline releases along the Colonial Pipeline—releases that threatened the Cahaba River. In response to those catastrophic releases, Mr. Butler sampled the Cahaba River mainstem for a biological baseline and found a coal darter. As part of his professional interest in retaining the biodiversity of the Cahaba River, Mr. Butler often works with biologists to sample for fish throughout the river system, and he regularly finds and physically holds coal darters. In addition to encountering coal darters during sampling events, he also sees the fish when snorkeling, taking underwater photos, and simply when standing in the river or along a gravel bar. For example, he looks for and often views coal darters when standing on a gravel bar in the mainstem of the Cahaba River just upstream from Highway 52. The gravel bar is a canoe takeout. He visits the bar about 40-50 times per year and will continue to visit the area and look for coal darters at that rate over the next several years.

10.     Mr. Butler also enjoys sharing his appreciation for the coal darter with others through education. For example, he brings both children and adults to the Cahaba River and

often shows them the species, including coal darters, that use the river for habitat. In short, the coal darter has special meaning for Mr. Butler. Having grown up first interested in the more famous sportfish in the Cahaba River, he views his growing connection to the coal darter—a smaller fish that hides in the rocks at the bottom of the river and plays an important role in the food chain—as a symbol representing his deeper understanding of, and his efforts to protect, the river ecosystem.

11.     Defendants' violation of the ESA's final listing status deadline has delayed ESA protections for the coal darter. This inaction harms Mr. Brooke's, Ms. Overton's, Mr. Butler's, and other Center members' interests in the coal darter by permitting the species' continued trajectory toward extinction, thereby decreasing the likelihood that Mr. Brooke, Ms. Overton, Mr. Butler, and other Center members will encounter the species as part of their excursions. These injuries are actual, concrete, and ongoing injuries, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief.

12.     The relief that the Center seeks would redress these injuries by providing ESA protections for the coal darter and its habitat, thus promoting its conservation and recovery. The Center and its members have no other adequate remedy at law.

13.     Defendant DOUGLAS BURGUM is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA, including decisions on the coal darter. Defendant Burgum is sued in his official capacity.

14.     Defendant BRIAN NESVIK is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Nesvik is sued in his official capacity.

15.    Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

## STATUTORY FRAMEWORK

16.    The ESA, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

17.    The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

18.    A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" when it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

19.    The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." *Id.* § 1533(a)(1).

20.     If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id*. § 1532(6), (20).

21.     The Service must base all listing determinations "solely on the basis of the best scientific and commercial data available." *Id.* § 1533(b)(1)(A).

22.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby an interested person may petition the Service to list a species as endangered or threatened. *Id*. § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines. First, "[t]o the maximum extent practicable," within 90 days of receipt of a listing petition the Service must publish an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id*. § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes, and that finding is a final agency action subject to judicial review. *Id*. § 1533(b)(3)(C)(ii).

23.     If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must promptly publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.* § 1533(b)(3)(A).

24.     Within twelve months of receiving a petition for which the Service found that listing "may be warranted," the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is

"warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

25.     If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species. *Id*. § 1533(a)(3)(A), (b)(3)(B)(ii). Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species and designate critical habitat. *Id*. § 1533(b)(6)(A).

26.     If the Service instead issues a finding that listing the species is "not warranted," the process concludes, and that finding is a final agency action subject to judicial review. *Id*. § 1533(b)(3)(C)(ii).

27.     A species receives the numerous substantive protections of the ESA only after it is listed as an endangered or threatened species. For example, the Service must designate "critical habitat" for each endangered and threatened species. *Id*. § 1533(a)(3). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

28.     In addition, section 7(a)(2) of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* § 1536(a)(2).

29.     ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; *see also id.* § 1532(19) (defining "take").

**FACTUAL BACKGROUND**

30.     The coal darter (*Percina brevicauda*) is a small, benthic freshwater fish species that is endemic to three river systems in the Mobile River basin in Alabama: the Black Warrior, Cahaba, and Coosa river systems. Coal darters inhabit small to medium-sized rivers and the larger tributaries of those rivers with moderate to swift flowing water. They live in shallow gravel bars commonly blanketed with aquatic plants like river-weed and water-willow, as well as shoots and troughs in the bedrock at the foot of river rapids. According to the Service's proposed listing rule, coal darters historically occupied over 355 river miles in the three river systems, but their range has dwindled by nearly half—they now occupy only 189 river miles.



*Photo Credit: Bernie Kuhajda, Tennessee Aquarium Conservation Institute*

31.     Much of the coal darter's habitat has been lost to dams and other impoundments and degraded water quality. Threats to water quality include poultry houses and other agricultural activities, mining, silviculture, and nearby urbanization. The effects of climate change, such as increased temperatures, drought, sea-level rise, hurricane regime changes, and increased seasonal precipitation, are additional threats to the coal darter species.

32.     The Center petitioned the Service to list the coal darter under the ESA more than fifteen years ago, on April 20, 2010.

33.     The Service issued a positive 90-day finding that listing the coal darter may be warranted on September 27, 2011. Over a decade later, on December 21, 2023, the Service proposed listing the coal darter as threatened. The Service also proposed an ESA section 4(d) Rule allowing exceptions that incentivize conservation actions to help address the coal darter's conservation needs. The Service held two comment periods for a total of 90 days on the proposed listing rule.

34.     At the time of the proposed listing, the Service announced that it found critical habitat for the coal darter to be prudent and determinable and had developed a proposed critical habitat rule for the species. Yet the Service stated that it learned in October 2023 that the Office of Information and Regulatory Affairs ("OIRA") found the proposed critical habitat rule to be significant and needing OIRA review. The Service therefore did not concurrently publish a proposed critical habitat rule. The Service still has not issued a proposed critical habitat rule.

35.     The Service has yet to issue a final listing determination for the coal darter, even though the deadline for publication was on December 21, 2024.

36.     The Service's final listing determination for the coal darter is long past due.

37.     The Center provided Defendants with 60-days' notice of its intent to sue for these ESA violations, as required by 16 U.S.C. § 1540(g)(2)(C), by a January 29, 2026, letter to Defendants. The letter was also delivered to the Southeast Region Director and Alabama Field Supervisor of the U.S. Fish and Wildlife Service.

## CLAIM FOR RELIEF

### Violation of the ESA for Failure to Publish a Timely Final Listing Determination for the Coal Darter

38.    The Center re-alleges and incorporates all allegations set forth in the preceding paragraphs.

39.    The ESA requires that the Service publish a final listing rule within one year of a 12-month finding that proposes listing a species. 16 U.S.C. § 1533(b)(6)(A)(i).

40.    The Service issued a 12-month finding that proposed the listing of the coal darter more than a year ago, on December 21, 2023, yet the Service has not published the required final listing determination for the species.

41.    Accordingly, Defendants have failed to perform their nondiscretionary duty to publish a final listing determination for the coal darter, in violation of the ESA. *See* 16 U.S.C. § 1533(b)(6)(A)(i).

## REQUEST FOR RELIEF

WHEREFORE, the Center respectfully requests that the Court enter judgment providing the following relief:

1.    Declare that Defendants violated the ESA by failing to issue a timely final listing determination of the coal darter, in response to the Center's petition to list the coal darter under the ESA;

2.    Provide injunctive relief compelling Defendants to issue the final listing determination of the coal darter by a date certain;

3.    Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

11

4.      Grant the Center its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5.      Provide such other relief as the Court deems just and proper.

Respectfully submitted this 7th day of April, 2026.

/s/ *Daniel H. Waltz*
Daniel H. Waltz, D.D.C. No. D00424
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel:    (303) 880-9136
Fax:    (520) 623-9797
dwaltz@biologicaldiversity.org

/s/ *Lindsay E. Reeves*
Lindsay E. Reeves, La. Bar No. 32703*
Center for Biological Diversity
3436 Magazine Street, FRNT PMB 539
New Orleans, LA 70115
Phone: (504) 342-4337
lreeves@biologicaldiversity.org

*Seeking Admission Pro Hac Vice*

*Attorneys for Plaintiff*

12